UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SANDRA DAVIS,**

        **Plaintiff,**

v.                                                                                              Case No: 6:22-cv-931-EJK

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

**ORDER**[1]

This cause comes before the Court on *pro se* Plaintiff's appeal of an administrative decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Tr. 12.) Plaintiff has exhausted the available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the parties' memoranda (Docs. 31, 34), and the applicable law. For the reasons stated herein, the Court affirms the Commissioner's decision.

---

[1] On July 22, 2022, both parties consented to the exercise of jurisdiction by a magistrate judge. (Doc. 9.) The case was referred by an Order of Reference on August 5, 2022. (Doc. 10.)

## I. BACKGROUND

On February 27, 2020, Plaintiff filed an application for DIB and SSI. (Tr. 12.) She alleged an onset of disability beginning December 31, 2018, due to arthritis in both hands, 90% hearing loss in her left ear, possible cataracts, high blood pressure, left shoulder muscle injury, and a pinched nerve in her lower left hip. (Tr. 52, 67.) Plaintiff's last insured date was September 30, 2020, so she was required to establish disability on or before this date to be entitled to benefits. (Tr. 14.)

Plaintiff's application was denied initially, and upon reconsideration. (Tr. 51–80, 91–136.) The Administrative Law Judge ("ALJ") held a telephonic hearing on April 20, 2021, due to the COVID-19 pandemic. (Tr. 26–50.) In a decision dated June 30, 2021, the ALJ found that Plaintiff was not disabled. (Tr. 9–25.) The Appeals Council denied Plaintiff's request for review on March 18, 2022, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6.)

## II. THE ALJ'S DECISION

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–1240

(11th Cir. 2004), *superseded on other grounds*. Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. *Id.* at 1241 n.10.

Here, the ALJ performed the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between her alleged onset date of December 31, 2018, through the date last insured of September 30, 2020. (Tr. 14.) At step two, the ALJ found that, through the date last insured, Plaintiff had the following severe impairments that significantly limited her ability to perform basic work activities: hypertension, left ear hearing loss, and osteoarthritis of the left shoulder. (*Id.*) At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15.)

The ALJ then found that Plaintiff had the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b); **she could lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently**, stand and/or walk 6 hours and sit 6 hours in an 8-hour workday with normal breaks, except with occasional pushing/pulling with the left upper extremity. She could never climb ladders, ropes and scaffolds but frequently climb ramps and stairs. The claimant can frequently balance and occasionally crawl. She can occasionally reach overhead with the left upper extremity, frequently reach in all other directions with the left upper extremity and frequently handle bilaterally. The claimant must work in environments that have no more than a moderate noise level (as defined in the Selected Characteristics of

> Occupations (SCO)). She can have occasional exposure to vibration and occasional exposure to temperatures over 90 degrees Fahrenheit. The claimant could have no exposure to unprotected heights or dangerous moving machinery.

(Tr. 16) (emphasis added).

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a customer service clerk. (Tr. 19.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. 20.)

### III.   ISSUE ON APPEAL

Plaintiff, who is proceeding *pro se*, challenges the ALJ's RFC assessment. In particular, she attacks the ALJ's determination that Plaintiff can lift twenty pounds occasionally. (Doc. 31-2.)

### IV.   STANDARD OF REVIEW

The Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## V. ANALYSIS

Plaintiff argues that the ALJ's assessment, particularly that she can lift up to 20 pounds, was in error, in light of her physical impairments. (Doc. 31-2 at 2.) To support this, Plaintiff states that the Vocational Expert ("VE"), Ms. Olga Idrissi, opined that Plaintiff could not lift over 5 pounds. (*Id.*) The undersigned assumes that Plaintiff meant to refer to the consultative examiner in making this argument, because, after reviewing the hearing transcript, the VE did not express an opinion as to Plaintiff's work-related abilities. (Tr. 26–50.) Instead, it was the consultative examiner who opined that Plaintiff would be limited to lifting no more than 5 pounds. (Tr. 452–460.) Thus, the Court will first review the ALJ's RFC assessment generally, and then the ALJ's evaluation of the consultative examiner's opinion.

### A. RFC Assessment

In Plaintiff's memorandum (Doc. 31-2), she details her relevant medical history. Plaintiff recounts that she injured her left shoulder twenty years ago. (*Id.*) After treating with a chiropractor, her shoulder reached maximum medical improvement, but never fully healed. (*Id.* at 1.) Plaintiff was also told, presumably by her chiropractor, that she should never try to lift over twenty pounds. (*Id.*) After this injury, she left her electrician position and took a job doing customer service over the phone. (*Id.*) She worked in this customer service position for about 15 years, but after looking at computer screens for that length of time (6 to 8 hours per day), she developed eye problems, which continue to worsen, causing her eyes to be bloodshot and watery. (*Id.*) She has also developed

headaches as a result. (*Id.*)

Plaintiff was also involved in a motor vehicle accident, leading to sciatic nerve pain in her lower back. (*Id.*) She sought chiropractic treatment for this. (*Id.*) She was able to return to work, but sitting in a chair all day caused her unbearable pain. (*Id.*) Plaintiff then left the customer service position and tried to go back to work as an electrician, but she was not able to lift her arm over her head long enough to screw in a light kit without pain. (*Id.*) Plaintiff also suffers from high blood pressure. (*Id.* at 2.) At some point, Plaintiff experienced a fall on the sidewalk, herniating a disc in her lower back. (*Id.*) She is no longer able to stand in the same position for longer than five minutes before her legs give out, due to chronic arthritis in both knees. (*Id.*) She has been prescribed medication for her high blood pressure, arthritis, and lower back issues. (*Id.*)

As stated in Section II *supra*, the ALJ reached an RFC that required lifting of up to 20 pounds and reaching overhead occasionally, among other things. (Tr. 16.) The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. Social Security Regulation 96-8p provides that the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" which "means 8 hours a day, for 5 days a week, or an equivalent work schedule." 1996 WL 374184, at *1 (July 2, 1996); *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (stating that the RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments").

To support the ALJ's determination that Plaintiff was able to return to her past job as a customer service clerk, the ALJ is "required to consider all the duties of that work and evaluate [Plaintiff's] ability to perform them despite [her] impairments." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (per curiam) (abrogated in part on other grounds). To that end, the ALJ must consider all relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012) ("Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability."). Importantly, "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC." *Schink*, 935 F.3d at 1268.

Upon review, the undersigned finds that the ALJ properly examined Plaintiff's impairments, in conjunction with the medical evidence and other evidence of record, and reached an RFC determination that was supported by substantial evidence. The ALJ acknowledged that Plaintiff's neck and back pain, including the inability to reach overhead, was the reason Plaintiff stopped working as an electrician and became a telemarketer. (Tr. 17.) She also acknowledged Plaintiff's subsequent car accident that further injured her neck, back, and shoulder. (*Id.*) The ALJ noted that Plaintiff had left shoulder pain that radiated into her arm and hand, causing reduced capacity to grip and hold objects as well as reach overhead. (*Id.*) The ALJ also acknowledged Plaintiff's issues with sitting for long periods because of her back pain. (*Id.*) The ALJ then

recounted Plaintiff's testimony at the hearing that she was bed ridden for 21 hours per day with severe pain. (*Id.*) She also acknowledged that Plaintiff relied on Tylenol to reduce her pain (as opposed to narcotic pain medication), so that she could take showers without assistance and grocery shop with some assistance. (*Id.*)

But the ALJ ultimately found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and Plaintiff's course of treatment. (*Id.*) The ALJ found a notable absence of medical records demonstrating Plaintiff's neck or back pain. (*Id.*) Rather, the ALJ noted the medical evidence revealed only one emergency room visit, in January 2019, for chest pain and left arm bruising. (Tr. 17.) At that visit, Plaintiff's chest x-ray revealed normal shoulders and a normal thoracic spine. (*Id.*) The left shoulder x-ray did not reveal any acute abnormality. (*Id.*) Plaintiff had no musculoskeletal deficits upon examination, and she had full active movement of all extremities. (*Id.*) Her left shoulder was tender, but her neck had no tenderness or swelling. (*Id.*) The ALJ noted that Plaintiff did have high blood pressure at this examination, but that Plaintiff had not been taking her blood pressure medication as prescribed. (Tr. 18.) The ALJ also assessed Plaintiff's hearing loss, which the medical evidence showed to be profound in the left ear. (*Id.*)

The ALJ further noted that there were no other medical records showing ongoing treatment. (*Id.*) Despite Plaintiff's testimony that she was essentially bed-ridden for so much of the day, there was no evidence that she sought medical treatment or prescriptions for pain management, but she instead relied upon over-the-counter

medication to manage pain. (*Id.*) The ALJ also had no evidence that any doctor recommended surgery, prescribed physical therapy, or was examined by a specialist. (*Id.*)

The ALJ examined the very limited medical evidence of record, including the emergency room visit, the audiologist's opinion, the consultative examiner's opinion, and the medical consultants' opinions. (Tr. 18–19.) The ALJ adequately assessed Plaintiff's complaints, including her left shoulder pain, back pain, and neck pain, and acknowledged Plaintiff's issues with high blood pressure and standing for long periods of time. The only issue that Plaintiff raised in her memorandum, but the ALJ did not discuss, concerned Plaintiff's eye problems. (*See also* Tr. 338 (noting "possible [c]ataracts" in Plaintiff's disability report application).) But the undersigned cannot locate any evidence that this issue was presented to the ALJ at the administrative phase, either in the medical records or at Plaintiff's hearing before the ALJ; it also does not seem to have been presented to the Appeals Council. Because this issue was not presented to the ALJ or Appeals Council, I cannot consider it in my review of the decisions below. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009–10 (11th Cir. 2020) (unpublished) (stating the district court is limited to the evidence presented to the ALJ).

For the reasons set forth above, the ALJ's RFC determination is supported by substantial evidence.

### B. Medical Opinion Evidence

Turning to the ALJ's evaluation of the medical evidence, Plaintiff was examined by a consultative examiner, who opined that Plaintiff could lift no more than 5 pounds with her left upper extremity; the ALJ found this "non-persuasive." (*Id.*) As to this opinion, the ALJ stated:

> The opinion in Exhibit 5F is non-persuasive. This consultative examiner limited the claimant's lifting to no more than 5 pounds with the left upper extremity and diagnosed a "strain." However, such severe residual functional capacity restriction is not supported by the totality of the record. At the consultative examination, specifically, the claimant had minimally reduced left shoulder range of motion and tenderness as noted above, but no weakness or sensory deficits. Indeed, the claimant stated her left shoulder pain was aggravated with lifting and carrying objects heavier than a gallon of milk, consistent with an ability to lift and carry more than 5 pounds (Hearing testimony). Moreover, there is no evidence the claimant has required ongoing treatment or pain medication associated with this condition. Hospital evaluations and imaging revealed a strain to the trapezius and chronic Hill-Sach's deformity in the left shoulder, with mostly normal clinical findings. The claimant was advised to take a brief rest period of one week with no work and no use of the left arm (Ex. 6F). This temporary residual functional capacity restriction is more persuasive than the consultative examiner reducing lifting and carrying to no more than five pounds because it is supported by imaging in conjunction with physical examinations. However, the undersigned is persuaded, based on the totality of the hearing level evidence, that the claimant does have some persistent limitations in use of her left upper extremity, most significantly with regard to overhead reaching. Additionally, given that none of her examining physicians have recommended surgery or other aggressive treatment only further supports finding temporary residual functional capacity limitations.

(Tr. 18–19.)

Under the revised regulations, the Commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [] medical sources." 20 C.F.R. §§ 1520c(a), 416.920c(a). Rather, the Commissioner must "consider" the "persuasiveness" of all medical opinions and prior administrative medical findings. *Id.* To that end, the Commissioner considers five factors: 1) supportability; 2) consistency; 3) relationship with the claimant;[2] 4) specialization; and 5) other factors "that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* §§ 404.1520c(c), 416.920c(c).

The most important of these factors are supportability and consistency, and the ALJ must explain the consideration of those two factors. *Id.* §§ 404.1520c(a), (b)(2); 416.920c(a), (b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors (i.e., relationship with claimant, specialization, and "other factors"). *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source. *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). The regulations state:

---

[2] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)– (v).

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

*Id*. In sum, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record.

Under the new regulations, "supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

To the extent Plaintiff challenges the ALJ's rejection of the consultative examiner's opinion as non-persuasive, the undersigned finds that the ALJ properly explained why the opinion was not persuasive by examining the supportability and consistency factors. As to lack of supportability, the ALJ found that, despite being

limited to lifting no more than 5 pounds with her left upper extremity, at the exam, Plaintiff had only minimally reduced left shoulder range of motion and tenderness. (Tr. 18; 455; 457 (showing left shoulder forward elevation at 90/150 and abduction at 90/150).) She also did not have weakness or sensory deficits. (Tr. 18; Tr. 455 (showing normal strength in the left upper extremity).) Moreover, Plaintiff told the consultative examiner her shoulder pain worsened when carrying objects heavier than a gallon of milk, which the ALJ found demonstrated Plaintiff could carry more than 5 pounds. (Tr. 18; 453.)

As to lack of consistency, the ALJ found that the consultative examiner's opinion was not consistent with other medical evidence. (Tr. 18–19.) Plaintiff had not established that she required ongoing treatment of pain medication for her shoulder condition. (Tr. 18.) Further, her emergency room visit in January 2019, and imaging done at that visit on her left shoulder, showed no acute abnormality, though chronic Hill-Sach's deformity in the left shoulder was suspected due to a "focal defect at the junction of the articular surface of the humerus and tuberosity."[3] (Tr. 18–19; 426.) Plaintiff had full active movement of all her extremities, with only left shoulder tenderness. (Tr. 17; 441.) Therefore, the ALJ found the opinion non-persuasive. However, the ALJ *recognized* that Plaintiff did have issues with reaching overhead with

---

[3] A Hill-Sachs lesion is a type of injury affecting the humerus, typically experienced with a dislocated shoulder. *Hill-Sachs Lesion*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/24304-hill-sachs-lesion (last visited Dec. 6, 2023).

her left shoulder, and ultimately incorporated this into the RFC, limiting her to only *occasionally* reaching overhead with the left upper extremity. (Tr. 16.)

Moreover, the ALJ found that Plaintiff could return to her prior work as a customer service clerk (DOT 241.367.014), which is performed at a sedentary level with an SVP of 5. (Tr. 19.) "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a); 416.967(a). Therefore, Plaintiff's prior work is classified at a *more* restrictive level than her RFC—in other words, work as a customer service clerk involves even less functioning than what the ALJ found that Plaintiff could perform.

In summary, the ALJ's consideration of the consultative examiner's opinion was proper. The ALJ discussed the supportability and consistency of the consultative examiner's opinion. *See, e.g.*, *Moberg v. Comm'r of Soc. Sec.*, No. 6:19-cv-891-Orl-LRH, 2020 WL 4936981, at *4 (M.D. Fla. Aug. 24, 2020) (finding that the ALJ's consideration of medical opinions "comported with the requirements of the new Social Security Regulations because the ALJ articulated the evidence affecting the supportability and consistency of each medical opinion and determined whether such opinion was supported by the weight of the record evidence"). The undersigned may not, in his capacity as the reviewing Court, reweigh the evidence with regard to the ALJ's consideration of the consultative examiner's opinion. Because the ALJ's decision is supported by substantial evidence, the Court finds that the Commissioner's decision is due to be affirmed.

## VI. CONCLUSION

Upon consideration of the foregoing, it is **ORDERED** and **ADJUDGED** that:

1. The Commissioner's final decision in this case is **AFFIRMED**.

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on February 26, 2024.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE